UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALI SAQIB SAQIB,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-02680-JNW

ORDER GRANTING IN PART PETITIONER'S HABEAS CORPUS PETITION

This matter comes before the Court on Petitioner Ali Saqib Saqib's petition for a writ of habeas corpus challenging his prolonged detention in immigration custody. Dkt. No. 1. The Court has reviewed the petition, the return, and the traverse, and for the reasons stated below, GRANTS the petition IN PART.

## 1. BACKGROUND

Ali Saqib Saqib is a 24-year-old citizen of Pakistan in the custody of Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 3 ¶¶ 2-3. Saqib entered the United States around January 25, 2025, across the southern border into Arizona where he encountered Border Patrol. *Id.* ¶ 5, 7. They served Saqib a Notice and

Order of Expedited Removal under Immigration and Nationality Act (INA) § 235(b)(1) on January 26, 2025, finding him inadmissible under INA § 212(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document. Saqib had converted to the Shia faith and, before fleeing Pakistan, was tortured and beaten by "Sunni extremists." On March 20, 2025, an asylum officer assessed that claim under the Convention Against Torture and found that Saqib had not established he would more likely than not be tortured in Pakistan. Dkt. No. 8-4 at 2. Nearly six months passed. USCIS then interviewed Saqib again and, on September 25, 2025, found that he had a credible fear. Dkt. No. 7 ¶¶ 15–18.

In October 2025, the Department of Homeland Security (DHS) vacated the Order of Expedited Removal and issued a Notice to Appear finding Saqib to be a "[noncitizen] present in the United States who has not been admitted or paroled." Dkt. No. 8-5 at 2. On December 30, 2025, an Immigration Judge (IJ) ordered Saqib removed to Pakistan and denied his applications for asylum, withholding of removal, and deferral of removal under the Convention Against Torture. Dkt. No. 8-6 at 2. Saqib appealed to the BIA—that appeal is still pending. Dkt. No 3 ¶ 13.

Saqib says his detention at the NWIPC has resembled penal confinement. He is confined to a cell at night, where it is so cold that he cannot sleep. He often receives spoiled and moldy food served at irregular hours. He has not been able to see a doctor, and his mental health has deteriorated from the stress of confinement, the isolation of having no one who speaks his language, and harassment by the guards. Respondents dispute much of this.

## 2. LEGAL STANDARD

Respondents assert that Saqib is detained under 8 U.S.C. § 1225(b). Dkt. No. 6 at 6. Saqib does not challenge that classification, and the Court proceeds on that basis. Section 1225(b) mandates his detention, but it does not say when detention grows so long that it offends due process. Neither the Supreme Court nor the Ninth Circuit has answered that question. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Without that guidance, courts in this District have settled on the six factors adopted in *Banda*, and this Court has done the same. Those factors are:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *see Zazai v. Scott*, No. 2:26-cv-02316-JNW, 2026 WL 2363649, at *2 (W.D. Wash. Aug. 14, 2026); *Dovlatov v. Hernandez*, No. 2:26-cv-00826-JNW, 2026 WL 1030454, at *2 (W.D. Wash. Apr. 16, 2026). The parties agree the *Banda* test applies. The Court applies it again here. Because the petition is resolved under *Banda*, the Court need not reach the alternative *Mathews* analysis. *See Banda*, 385 F. Supp. 3d at 1106–07.

## 3. DISCUSSION

### 3.1 Saqib's continued detention without a bond hearing has become unreasonable.

#### 3.1.1 The first factor.

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118. Respondents agree that Saqib's detention, which has now exceeded 18 months, has become unreasonably prolonged, and that this factor favors him. Dkt. No. 6 at 8. So does the Court. *See, e.g., Ashemuke v. ICE Field Off. Dir.*, No. 2:23-cv-1592-RSL, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024) (eleven months); *Kumar v. Hermosillo*, No. 2:26-CV-00389-JNW, 2026 WL 523276, at *2 (W.D. Wash. Feb. 25, 2026) (nine months). Context matters, too. What the Court is examining is "the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A.*, 358 F. Supp. 3d at 859). No IJ has made either finding about Saqib because no one has taken up the question at all. This factor favors Saqib.

#### 3.1.2 The second factor.

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119. Respondents argue this factor favors the government because "briefing is finished [in Saqib's BIA appeal] and only the BIA's decision remains[.]" Dkt. No. 6 at 9. They add that if the BIA affirms, the removal order

becomes final, and a petition for review to the Ninth Circuit will not by itself stop removal.

Those are fair points, but they don't supply a limit on how much linger Saqib will be held. He appealed more than eight months ago, and the BIA still has not ruled. Dkt. No. 7 ¶¶ 25, 28. Respondents don't say when it will. And the prolonged timeline for appellate review of removal orders is well established by the realities of immigration litigation. *Banda*, 385 F. Supp. 3d at 1119; *Jamal A.,* 358 F. Supp. 3d at 859. Even if the BIA rules promptly, Saqib can seek review from the Ninth Circuit which can take up to two years. *Id.* The Court has rejected this same argument before: completed briefing before the BIA means only that one stage of a potentially lengthy appellate process may soon end. *Dovlatov*, 2026 WL 1030454, at *2; *see Zazai*, 2026 WL 2363649, at *2. This factor favors Saqib.

#### 3.1.3 The third factor.

The third *Banda* factor examines the conditions of the petitioner's detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation modified). Courts have recognized that the conditions at NWIPC resemble prison conditions. *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-CV-01807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026) (collecting cases), *report and recommendation adopted,* No. 2:25-CV-01807-KKE-GJL, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026).

Respondents claim that conditions at the NWIPC weigh in their favor because onsite medical care is available "24 hours a day, seven days a week" and Tacoma-Pierce County Department of Health inspection reports do not show "systematic problems with food quality, sanitation, or other basic conditions of confinement." Dkt. No. 6 at 10. The fact that there is medical care onsite and sometimes food fit for human consumption does not mean the conditions at NWIPC differ from those of penal confinement. Thus, the NWIPC conditions tip this factor in Saqib's favor, and his mental health difficulties compound it.

**3.1.4 The fourth and fifth factors.**

The fourth and fifth *Banda* factors consider delays in the removal proceedings caused by the petitioner and the government, respectively. Respondents argue that the fourth factor favors the government because Saqib requested continuances in Immigration Court between October 27 and December 30, 2025, and then asked the BIA to extend his briefing deadline by 21 days. Saqib responds that nothing suggests his requests were made for the purpose of delay—Saqib required additional time to properly represent himself. The Court agrees and finds no reason to hold Saqib's requests for relatively short continuances against him. The fourth factor is neutral.

Saqib argues the government caused delay because "it took about ten months for him to be placed in full removal proceedings" despite his expressing fear of return to Pakistan shortly after crossing the border. Dkt. No. 9 at 7. Respondents contend "[t]he interval [Saqib] highlights is . . . explained by . . . intervening class

litigation rather than by agency inaction or neglect." Dkt. No. 6 at 12. That explanation covers part of the gap. The asylum officer finished the torture assessment in March 2025, and the class litigation Respondents rely on did not produce its orders until July. Dkt. No. 7 ¶¶ 12, 14. But the record does not show neglect either. The fifth factor is neutral.

#### 3.1.5 The sixth factor.

Under the sixth *Banda* factor, the Court considers the likelihood that removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120. The Court agrees with Saqib and Respondents that predicting that outcome on this record would be speculative. When there is a pending appeal after a denial of relief, courts weigh this factor as neutral. *Banda*, 385 F. Supp. 3d at 1120. *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 932 (W.D. Wash. 2020).

#### 3.1.6 Weighing the factors.

In sum, the first three factors favor Saqib, and the rest are neutral. No factor favors Respondents. And the most important factor—length of detention—favors Saqib. On balance, the *Banda* test favors granting Saqib a bond hearing. Saqib's "continued mandatory detention under § 1225(b) has become unreasonable and [] due process requires the Government to provide [him] with a bond hearing." *Banda*, 385 F. Supp. 3d at 1120.

#### 3.1.7 Evidentiary standard at the bond hearing.

At Saqib's bond hearing, Respondents bear the burden of proving by clear and convincing evidence that Saqib poses a flight risk or a danger to the community

at the time of the individualized bond hearing. *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), abrogated on other grounds by *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (holding "the constitutionally grounded hearing requirements set forth in *Singh* are also applicable [to bond hearings for those detained under § 1225(b)]")); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that clear-and-convincing-evidence standard in *Singh* was based on general principles of due process). Respondents agree this is the correct standard. Dkt. No. 6 at 13.

**3.1.8 The scope of relief.**

Saqib does not ask for a bond hearing. He seeks immediate release, arguing that "recent patterns of constitutional violations at bond hearings in Tacoma Immigration Court, make a bond hearing an inadequate remedy[.]" Dkt. No. 9 at 8. Saqib urges the Court to apply *Mathews v. Eldridge* and find bond hearings an insufficient procedural safeguard to protect Saqib's liberty interests. *Id.* But the reason his detention has become unreasonable is that no one has decided whether he needs to be held, and a bond hearing supplies exactly that. *Banda* itself found detention under § 1225(b) unconstitutional and ordered a bond hearing rather than release. 385 F. Supp. 3d at 1121. Courts in this District have ordinarily done the same, holding that the proper remedy for prolonged detention is an individualized bond hearing. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at * 9; *Hong,* 2022 WL 1078627, at *7 (explaining that the remedy for prolonged detention is a bond hearing); *Pasillas v. ICE Field Off. Dir.*, No. 2:21- cv-681-RAJ, 2021 WL 8084206, at *7 (W.D.

Wash. Oct. 18, 2021), *report and recommendation adopted*, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022) (granting bond hearing but not release). If bond is denied and Saqib believes the hearing is constitutionally deficient, he may file a second habeas petition challenging that denial.

Saqib also asks the Court to enjoin Respondents from re-detaining him absent written notice and a hearing before a neutral decisionmaker. Dkt. No. 9 at 12. He raises that request for the first time in his traverse, and the Court denies it as premature. Whether any future re-detention would be lawful depends on circumstances that have not occurred.

## 4. CONCLUSION

Accordingly, the Court orders as follows:

1. Saqib's prolonged detention under 8 U.S.C. § 1225(b) without a bond hearing violates the Due Process Clause of the Fifth Amendment.
2. The Petition for a Writ of Habeas Corpus is GRANTED IN PART. Dkt. No. 1.
3. Within FOURTEEN (14) days of this order, Respondents must provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). In the event the immigration judge sets bond, Respondents are ORDERED to immediately release Petitioner once bond is posted.
4. If the individualized bond hearing is not conducted within fourteen days of this order, Petitioner MUST be released immediately under appropriate conditions of supervised release.

5. Petitioner and Respondents MUST file a status report on the status of Petitioner's bond hearing no later than FIFTEEN (15) days from this order. The status report MUST detail if and when the bond hearing occurred, if bond was granted or denied and, if denied, the reasons for that denial.
6. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 28th day of August, 2026.

Jamal N. Whitehead
United States District Judge